## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| KIMBERLY BABB, an individual; JOSE AND LINDA CASAREZ, a married couple; JENNIE REED, an individual; and TAMMY VENABLE, an individual; on behalf of themselves and for all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 4:13-cv-00406 (Judge Clark/Judge Mazzant) |
| v. | § § | |
| TITLEMAX OF TEXAS, INC., a Texas Corporation, doing business as TITLEMAX; and DOES 1-100, inclusive; | § § § § § § | |
| Defendants. | § | DEMAND FOR JURY TRIAL |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Kimberly Babb, Jose and Linda Casarez, Jennie Reed, and Tammy Venable, on behalf of themselves and for all other members of the class herein, Plaintiffs herein, and files this First Amended Class Action Complaint against TitleMax of Texas, Inc., doing business as TitleMax, Defendant herein, as ordered by the Court after Defendant's removal to conform with the standards of federal pleadings, and for causes of actions and as grounds for relief respectfully shows the court the following:

### I.      PARTIES AND SERVICE

1.      Plaintiff Kimberley Babb is, and at relevant times was, a resident of Denton County, Texas.

2.      Plaintiffs Jose and Linda Casarez are, and at relevant times were, a married

couple and residents of Denton County, Texas.

3.    Plaintiff Jennie Reed is, and at relevant times was, a resident of Denton County, Texas.

4.    Plaintiff Tammy Venable is, and at relevant times was, a resident of Denton County, Texas.

5.    Defendant TitleMax of Texas, Inc., is, and at relevant times was, a for-profit corporation organized under the laws of the State of Delaware doing business throughout the State of Texas, including Denton County, Texas, through its two store-fronts.  Defendant has been served with process and appeared in this action.

## II.    JURISDICTION

6.    Plaintiffs originally filed in the District Courts for Denton County, Texas.

7.    Defendant subsequently removed this case to this Court by filing its Notice of Removal on July 15, 2013, based on federal diversity jurisdiction, 28 U.S.C. §1332(a).

## III.    CLASS ACTION ALLEGATIONS

8.    Plaintiffs Babb, Jose and Linda Casarez, Jennie Reed, and Tammy Venable bring this lawsuit on behalf of themselves and the proposed Class under Federal Rule of Civil Procedure 23 any other applicable laws or rules of civil procedure.  In addition to statutory damages for Class Members, this action seeks recovery of injunctive and equitable relief, attorneys' fees, and any and all other damages, in law or in equity, arising from the TitleMax's actions

9.    The proposed Class definition is as follows:

All residents of the State of Texas who received a one installment "motor vehicle title loan" as defined by Tex. Fin. Code §393.221 from TitleMax in the State of Texas and subsequently refinanced such loan at least one time during the Class Period.

10. The Class Period dates back four (4) years (or the length of the longest applicable statute of limitations for any claim asserted) from the date this action was commenced and continues through the present and the date of judgment.

11. This Class is so numerous that joinder of all members of the Class is impracticable. The precise number of members of the Class and their addresses are presently unknown to Plaintiffs, but is believed to exceed 1000 people. The precise number of persons in the Class and their identities and addresses may be ascertained from TitleMax's records. If deemed necessary by the Court, members of the class may be notified of the pendency of this action by mail, supplemented by published notice.

12. The proposed Class is ascertainable. The litigation of the questions of fact and law involved in this action will resolve the rights of all members of the Class and hence will have binding effect on all Class Members. These Class Members can be readily identified from TitleMax's records, public records and other means readily available to TitleMax, and thus to the Plaintiffs through minimally intrusive discovery.

13. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. These common questions of law and fact exist as to all members of the class and predominate over the questions affecting only individual members of the class. These common legal and factual questions include without limitation:

a. Whether TitleMax provided copies of all documents signed by Plaintiffs and the Class at the time of execution as mandated by Texas Finance Code §393.203;

b. Whether TitleMax provided the disclosures to Plaintiffs as required by Texas Finance Code §393.222;

c. Whether TitleMax's statements regarding the nature of the services it

offered to Plaintiffs was a false or misleading representation in the offer or sale of its services in violation of Texas Finance Code §393.304;

d.     Whether TitleMax's conduct in providing its services in a deceptive course of business in violation of Texas Finance Code §393.305; and

e.     Whether TitleMax is liable under the Texas Deceptive Trade Practices Act for violations of Texas Finance Code §393.203 and Texas Finance Code §393.222 as set forth in Texas Finance Code §393.504.

14.     Plaintiffs' claims are typical of the proposed Class because Plaintiffs and all Class Members received and refinanced motor vehicle title loans during the Class Period and did not receive all of the required copies of documents they executed at the time they executed such documents, did not receive the required disclosures under the Texas Finance Code, and were subject to TitleMax's same course of conduct of dealing with its customers, including the utilization of false or misleading statements and deceptive course of business.

15.     Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiffs do not have any interests that are antagonistic to those of the proposed Class.  Plaintiffs have retained counsel competent and experienced in the prosecution of this type of litigation.

16.     The proposed Class has a well-defined community of interest in the questions of fact and law to be litigated.  The common questions of law and fact predominate with respect to the liability issues, relief issues and anticipated affirmative defenses.  The named Plaintiffs have claims typical of the class members.  Without limitation, as a result of TitleMax's conduct alleged herein, Plaintiffs were deprived of the documents legally required to be given to them by state law, were deprived of the disclosures legally required by state law, and were subject to the

same course of dealing with TitleMax, all to Plaintiffs and the Class's injury in an ascertainable amount to be proven at the time of trial and/or a right to statutory damages.

17.     A class action is the superior method for fair and just adjudication of this controversy.  The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually.  Class adjudication will conserve judicial resources and will avoid the possibility of inconsistent rulings.  Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.  By contrast, class adjudication presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## IV.     FACTS

**TitleMax's Illegal and Dishonest Business Model**

18.     Defendant TitleMax of Texas, Inc., doing business as TitleMax ("TitleMax"), is a credit access business as defined by Tex. Finance Code §393.221(a) and a credit services organization as defined by Tex. Finance Code §393.001(3) (collectively "CAB").

19.     TitleMax operates retail locations and through the internet to market, advertise, and sell its services as a CAB to arrange short-term financing throughout the State of Texas, including at several locations in Denton County, Texas, including, but not limited to, a location at 501 N. Interstate 35 Frontage Road, Denton, Texas 76205 (the "I-35 Location"), 1701 W. University Drive, Denton, Texas 76201 (the "University Location"), and 601 Cross Timbers Road, Suite 114, Flower Mound, Texas 75028 (the "Flower Mound Location").  On information and belief, TitleMax operates more than 100 retail locations throughout the State of Texas.

20.     TitleMax's services include arranging financing or extensions of credit for

individuals from third-party lenders in the form of motor vehicle title loans as defined by Tex. Finance Code §393.221(3) ("Title Loans"), which such financing is secured by a customer's vehicle. As a CAB arranging for Title Loans, TitleMax is required to follow all of the requirements set forth in Tex. Finance Code, Chapter 393.

21.     When a customer enters into a Title Loan, even to refinance an existing Title Loan, TitleMax requires them to sign at least four different documents:  (1) a "Loan Agreement, Promissory Note, and Security Agreement" ("Loan Agreement"), (2) a "Credit Services Agreement and Security Agreement" ("CSO Agreement"), (3) a "Credit Services Disclosure Brochure" ("Disclosure Brochure"), and (4) a "Waiver of Jury Trial and Arbitration Agreement" ("Arbitration Agreement").

22.     According to the documents received to date, Title Loans that TitleMax arranges are short-term, 30-day loans on amounts from $0 - $5,000.  The third-party lender receives anywhere from 9% to 10% interest on these loans, while TitleMax receives a fee for its services ("CSO Fee") for *each* Title Loan that it arranges for its customers.  TitleMax's fee is directly related to the amount financed, which is usually 11.99% to 13.99% of the principal amounts, which can range from $139.90 for a $1,000 Title Loan to $359.70 for a $3,000 Title Loan.

23.     Knowing that most customers will not be able to pay-off the entire principal, with interest and fees, after the initial 30-day term, TitleMax designs its business so that Title Loans are refinanced multiple times on a monthly basis.  Each refinance of a Title Loan creates a new Title Loan, carrying a new CSO Fee.  Thus, if a customer enters into a Title Loan for $1,000, and refinances the Title Loan 12 times, they will have paid $1,678.80 in fees to TitleMax with little or no money being paid on the principal on the Title Loan.  Unless a customer can come up with the entire principal, they will virtually never be able to payoff the entire Title Loan.

24.     TitleMax routinely employs a course of dealing with its customers in which it either fails to provide certain disclosures as required by state law or it intentionally refers to the CSO Fee as the "payment" on a Title Loan to deceive its customers that the Title Loan is more like a traditional loan with a payment plan.

**City of Denton Ordinance Enacted to Protect Consumers from TitleMax**

25.     Seeing the predatory nature of Title Loans, the City of Denton passed an ordinance limiting a CAB's ability to continue soliciting customers to take out new Title Loans to refinance prior Title Loans.

26.     As a response to the City of Denton ordinance, the Consumer Service Alliance of Texas, representing CSOs and CABs, brought suit against the City to repeal or restrict the enforcement of the ordinance.  The case is currently pending in the 393rd District of Texas in Denton County, Texas and is Case No. 2013-60479-393.

27.     As a further unexpected result of this ordinance, on and after April 9, 2013, TitleMax stopped offering its services to its existing customers to arrange for new Title Loans to refinance prior Title Loans.  Instead, customers (including Plaintiffs) with existing Title Loans who were attempting to refinance their existing Title Loans, or make their "payment" as represented to them by TitleMax, went to the I-35 Location and the University Location and were told that they could get a one month "special" for a 0% interest loan from TMX Finance, Inc., and that they could then make their "payment" at the Flower Mound location after the one-month special period was over.

**Plaintiff Babb is Victimized by TitleMax**

28.     Kimberly Babb first entered into a Title Loan at TitleMax's I-35 Location in December 2012 to borrow $900 against her motor vehicle so that she and her husband – Dale

Babb – could travel to Fort Bragg, North Carolina, to see Dale's son return from his third tour of duty with the U.S. Army in Afghanistan and celebrate the two Purple Heart awards that he received in the line of duty. From January 2013 until April 2013, Kimberly has consistently refinanced her Title Loans, thus entering into 5 separate monthly Title Loans, each time paying anywhere from $150 - $250 per month as a fee for each Title Loan. Over the course of her dealings with TitleMax, Kimberly has paid anywhere from $750 to $1,250 in fees to TitleMax for the subsequent Title Loans. She currently owes the principal amount of $1,956.61 on her current Title Loan.

29. On or about April 29, 2013, Plaintiff Babb went to make her "payment" at the I-35 Location. At this time, still thinking that she had entered into a long-term loan, she specifically asked TitleMax's representative how much she had paid on the principal of the loan to date. The representative told Plaintiff Babb that he did not know what she was talking about. Confused, Plaintiff Babb then asked when the loan would be paid off if she kept making the payments as required. The representative then told Kim that she would *never* payoff the loan.

30. The representative then told Kim about the 30-day special zero-percent interest loan that Plaintiff Babb could have if she made her payment. The representative informed Plaintiff Babb that this special was in direct response to the newly passed City of Denton ordinance. Plaintiff Babb then asked if she could make a partial payment on her Title Loan to pay off some of the principal since there was zero percent interest. The representative told her that this was not possible, that the I-35 location was no longer taking payments, and that any future payments had to be made at the Flower Mound Location.

**Plaintiffs Jose and Linda Casarez are Victimized by TitleMax**

31. Jose and Linda Casarez first entered into a Title Loan in October 2012 to borrow

$900 against their motor vehicle. From November 2012 until March 2013, Jose and Linda consistently refinanced their Title Loans, thus entering into 6 separate monthly Title Loans, each time paying approximately $130 per month as a fee for each Title Loan. Over the course of their dealings with TitleMax, Jose and Linda have paid approximately $780 in fees to TitleMax for the subsequent Title Loans.

32. Jose and Linda are currently in default on their Title Loan for the outstanding amount of $1,068.50. TitleMax has repossessed the motor vehicle securing the Title Loan and according to a notice sent to Plaintiffs Casarez, planned to sell the vehicle at auction after May 21, 2013.

**Plaintiff Jennie Reed is Victimized by TitleMax**

33. Jennie Reed first entered into a Title Loan in March 2012 to borrow $933.00 against her motor vehicle at the University Location. From April 2012 until April 2013, Jennie has consistently refinanced her Title Loans, thus entering into 13 separate monthly Title Loans, each time paying anywhere from $150 - $260 per month as a fee for each Title Loan. Over the course of her dealings with TitleMax, Jennie has paid anywhere from $1,950 to $3,250 in fees to TitleMax for the subsequent Title Loans. She currently owes the principal amount of $1,722.96 on her current Title Loan.

34. On or about April 30, 2013, Plaintiff Reed went to make her "payment" at the University Location. TitleMax's representative told Plaintiff Reed about the 30-day special zero-percent interest loan that Plaintiff Reed could have if she made her payment and that the University Location was no longer taking payments, and that any future payments had to be made at the Flower Mound Location.

35. Plaintiff Reed specifically asked for copies of all of the documents that she signed

after entering into this new zero-percent interest special. TitleMax's representative then told Plaintiff Reed that she could not have these documents and that they would be forward to the Flower Mound Location so that Plaintiff Reed would be able to make her "payment" there in thirty-days.

**Plaintiff Tammy Venable is Victimized by TitleMax**

36.     Tammy Venable first entered into a Title Loan in May 2011 to borrow $5,000 against her motor vehicle. From June 2011 until April 2013, Tammy has consistently refinanced her Title Loans, thus entering into 24 separate monthly Title Loans, each time paying anywhere from $450 - $500 per month as a fee for each Title Loan. Over the course of her dealings with TitleMax, Tammy has paid anywhere from $10,800 to $12,000 in fees to TitleMax for the subsequent Title Loans. She currently owes the principal amount of $3,961.32 on her current Title Loan.

**TitleMax Treats All Plaintiffs The Same At TitleMax's Different Locations**

37.     Plaintiffs dealt with TitleMax and TitleMax's representatives at multiple locations in Denton County, Texas, including, but not limited to, TitleMax's I-35 location, TitleMax's University location, and TitleMax's Flower Mound location.

38.     Every time Plaintiffs refinanced their Title Loan after the original Title Loan, TitleMax had Plaintiffs sign multiple documents for each subsequent Title Loan, including a new CSO Agreement, a new Loan Agreement, a new Disclosure Brochure, and a new Arbitration Agreement.

39.     Upon receiving an initial Title Loan and upon refinancing every prior Title Loan with a new Title Loan, TitleMax failed to give Plaintiffs the opportunity to review these documents before signing them, as every document was placed in a stack with each and every

other document with the signature pages placed at certain breaks in the stacks of documents. The representatives at TitleMax's various locations all performed the same method of signing: quickly flipping through each document and obtaining a signature. TitleMax's universal practice is to obtain signatures and withhold the full agreement and disclosures that might tip the customer off to the real nature of the fee structure and Title Loan.

40.     One of the documents that TitleMax required each Plaintiff to sign, which was included in the stack of documents with all other agreements, was the Disclosure Brochure. However, customers (including Plaintiffs) are never provided an opportunity to review this document before signing, nor are customers given the opportunity to review and sign the very documents that the Disclosure Brochure claims that they have reviewed. Plaintiffs are not allowed to sign the Disclosure Brochure until after signing the CSO Agreement and the Loan Agreement.

41.     None of the Plaintiffs were provided with a copy of a disclosure promulgated by the Texas Finance Commission and contained in 7 Texas Administrative Code §83.6007 as required by Finance Code §393.223 before signing each document. TitleMax's universal practice and procedure is to omit this disclosure for all customers.

42.     TitleMax's universal practice of failing to give the required disclosures deceives customers (including Plaintiffs) as to the type and nature of loan that they are entering into.

43.     For example, when Plaintiff Babb first received her initial Title Loan at the I-35 Location, she thought that she was entering into a yearlong term loan at 18% interest with a payment of $150/month (which is actually the CSO fee and does not apply to the principal). Before signing the Title Loan documents at the I-35 Location, Plaintiff Babb and her husband verbally talked amongst themselves directly in front of TitleMax's representative, stating that

they could easily pay-off the loan after ten months and then be totally debt free with the year-long loan at 18% interest. TitleMax's representative, knowing full well that this was a false assumption, stayed silent and asked for Kim's signature and informing them that their "payment" was due in a month and that they could pay at the I-35 Location.

44.     Additionally egregious, each time Plaintiffs, and each and every Plaintiff, entered into new Title Loans to refinance prior Title Loans, they were never given full copies of the documents they executed.  In fact, TitleMax's course of business is to acquire the signatures from customers (such as Plaintiffs as stated above), then provide them with a stapled, six page packet of documents for the customer to take with them.  Included with this packet is page 1 of 3 of the new Loan Agreement (for the new Title Loan), a Customer Receipt, and a four page Privacy Policy and Notice.  TitleMax did not and does not provide customers with any other document, executed or unexecuted, that confirmed the Title Loan.

45.     Furthermore, TitleMax employed different representatives, management, and personnel to service Plaintiffs at each location and each different time that Plaintiffs entered into these Title Loans.  With the common practice established at these two TitleMax locations (the I-35 Location and the University Location), it is clear that TitleMax, through its corporate training, culture, and instruction, has established a course of business to intentionally withhold executed copies of documents from its customers at all of its locations, and therefore, TitleMax has injured and will continue to injure all residents of the State of Texas that obtain Title Loans from TitleMax.

46.     Therefore, to hold TitleMax accountable for its duplicitous and predatory behavior, Plaintiffs now bring this suit on behalf of themselves and those Class Members in the Class Definition as stated herein.

# V.    CAUSES OF ACTION

### First Cause of Action
### Violation of Texas Finance Code §393.203

47.    Plaintiffs re-allege each and every allegation contained in paragraphs 1-48 as though fully set forth herein.

48.    Tex. Finance Code §393.203 provides in full part that:

A credit services organization shall give to the consumer, when the document is signed, a copy of the completed contract and any other document the organization requires the consumer to sign.

49.    As a credit services organization, TitleMax was required by §393.203 to provide "a copy of the completed contract and any other document the organization requires the customer to sign."

50.    TitleMax failed to provide Plaintiffs, consumers defined under Tex. Finance Code §393.001(1), with full copies of their completed contracts and other documents that TitleMax required Plaintiffs to sign on numerous, subsequent occasions when Plaintiffs entered into such Title Loans.

51.    TitleMax's failure to provide the required documentation was all to the injury of Plaintiffs, as Plaintiffs were not given the ability to reference or review their full contract and/or documentation to fully and adequately understand the Title Loan and the other agreements and documents that Plaintiffs had signed.

52.    TitleMax is therefore liable to Plaintiffs and Plaintiffs are entitled to recover the following pursuant to Tex. Finance Code §393.503:

a.    Actual damages in an amount not less than the amount of CSO Fees Plaintiffs and the Class Members paid to TitleMax;

b.    Reasonable attorney's fees;

c.     Court costs; and

d.     Punitive damages.

53.     Therefore, in accordance with Tex. Finance Code §393.503, Plaintiffs seek all money damages, punitive damages, attorney fees, and any other relief allowable under Texas law and deemed appropriate by this Court, which is believed to exceed the jurisdictional requirement of this court.

54.     Furthermore, in addition to Plaintiffs' recovery of their money damages as set forth above, and as more fully set forth herein, Plaintiffs request this Court pursuant to Tex. Finance Code §393.502 to enjoin TitleMax's violation of the Tex. Finance Code, and order that TitleMax provide all signed copies of contract and documentation to its customers in conformance with Tex. Finance Code §393.203.

**Second Cause of Action**
**Violation of Texas Finance Code §393.222**

55.     Plaintiffs re-allege each and every allegation contained in paragraphs 1-56 as though fully set forth herein.

56.     Tex. Finance Code §393.222 provides in full part that:

(a) A credit access business shall post, in a conspicuous location in an area of the business accessible to consumers and on any Internet website, including a social media site, maintained by the credit access business:

(1) a schedule of all fees to be charged for services performed by the credit access business in connection with deferred presentment transactions and motor vehicle title loans, as applicable;

(2) a notice of the name and address of the Office of Consumer Credit Commissioner and the telephone number of the office's consumer helpline; and

(3) a notice that reads as follows:

"An advance of money obtained through a payday loan or auto title loan is not intended to meet long-term financial needs. A payday loan or auto title loan should only be used to meet immediate short-term cash needs. Refinancing the loan rather than paying the debt in full when due will require the payment of additional charges."

(b) the Finance Commission of Texas may adopt rules to implement this section.

57. As a credit access business, TitleMax was required by §393.222 to provide the required disclosures contained in §393.222(a) on any website, including a social media site, maintained by the credit access business.

58. TitleMax advertises its services through multiple websites, including its main website located at www.titlemax.biz, and through multiple social media websites, including the following:

      a. Facebook at https://www.facebook.com/TitleMax;

      b. Google+ at https://plus.google.com/102854966813817655051/posts;

      c. Twitter at https://twitter.com/TitleMax; and

      d. YouTube at https://www.youtube.com/titlemaxtitleloans

59. TitleMax has not provided, nor does it continue to provide, the required disclosures under §393.222(a) on any of the above-mentioned social networking sites, all in stark violation of §393.222.

60. As for TitleMax's website accessible at https://www.titlemax.biz, TitleMax has not provided, nor does it continue to provide, the disclosures in compliance with §393.222 and its implementation by the Texas Finance Commission, pursuant to its authority under §393.222(b), such rules codified in 7 Texas Admin. Code §83.6003, including, but not limited to, failing provide direct links for TitleMax's fee schedule or consumer credit notice.

61.     TitleMax's failure to provide the required disclosures was all to the injury of Plaintiffs and the general public, as Plaintiffs were not given the ability or opportunity to reference or review the required disclosures through TitleMax's website and certain social networking websites TitleMax utilized to fully and adequately understand the Title Loans and arrangement that Plaintiffs would have with TitleMax.

62.     TitleMax is therefore liable to Plaintiffs and Plaintiffs are entitled to recover the following pursuant to Tex. Finance Code §393.503:

    a.      Actual damages in an amount not less than the amount Plaintiffs paid to TitleMax;

    b.      Reasonable attorney's fees;

    c.      Court costs; and

    d.      Punitive damages.

63.     Therefore, in accordance with Tex. Finance Code §393.503, Plaintiffs seek all money damages, punitive damages, attorney fees, and any other relief allowable under Texas law and deemed appropriate by this Court, which is believed to exceed the jurisdictional requirement of this court.

64.     Furthermore, in addition to Plaintiffs' recovery of their money damages as set forth above, and as more fully set forth herein, Plaintiffs request this Court pursuant to Tex. Finance Code §393.502 to enjoin TitleMax's violation of the Tex. Finance Code, and order that TitleMax provide all required disclosures on their website and social media websites in conformance with Tex. Finance Code §393.222.

**Third Cause of Action**
**Violation of Tex. Finance Code §393.304**

65.     Plaintiffs re-allege each and every allegation contained in paragraphs 1-66 as though fully set forth herein.

66.     Tex. Finance Code §393.304 provides in part that:

A credit services organization or representative of the organization may not:  (1) make or use a false or misleading representation in the offer or sale of the services of the organization …

67.     As a credit services organization, TitleMax and its representatives violated this section by continually referring to the CSO Fee that Title Max charges for Title Loans as the "payment" for the Title Loan, luring Plaintiffs and those similarly situated to believe that this was the actual loan payment on the Title Loan. On information and belief, it is the policy and practice of TitleMax to train its employees to use "payment" language when referring to fee payments or monies paid to TitleMax, which will obviously confuse the consumer into believing that he/she is paying on a loan balance on not simply paying unrecoupable fees.

68.     TitleMax's violation of this section was all to the injury of Plaintiffs, as Plaintiffs continually paid the CSO Fee thinking that this was their monthly "payment" on the Title Loan, which the CSO Fee "payment" did not apply any proceeds to the Title Loan principal, but was paid in its entirety to TitleMax.

69.     TitleMax is therefore liable to Plaintiffs and Plaintiffs are entitled to recover the following pursuant to Tex. Finance Code §393.503:

a.     Actual damages in an amount not less than the amount Plaintiffs paid to TitleMax;

b.     Reasonable attorney's fees;

c.     Court costs; and

d.     Punitive damages.

70.     Therefore, in accordance with Tex. Finance Code §393.503, Plaintiffs seek all money damages, punitive damages, attorney fees, and any other relief allowable under Texas law and deemed appropriate by this Court, which is believed to exceed the jurisdictional requirement of this court.

71.     Furthermore, in addition to Plaintiffs' recovery of their money damages as set forth above, and as more fully set forth herein, Plaintiffs request this Court pursuant to Tex. Finance Code §393.502 to enjoin TitleMax's violation of the Tex. Finance Code, and order that TitleMax and its representatives stop referring to the CSO Fee as the "payment" on the Title Loan.

**Fourth Cause of Action**
**Violation of Tex. Finance Code §393.305**

72.     Plaintiffs re-allege each and every allegation contained in paragraphs 1-73 as though fully set forth herein.

73.      Tex. Finance Code §393.305 provides in full part that:

A credit services organization or a representative of the organization may not directly or indirectly engage in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization.

74.     As a credit services organization, TitleMax and its representatives violated this section by engaging in a deceptive course of business related to its services by continually representing to Plaintiffs that the CSO Fee that Title Max charges for Title Loans was the "payment" for the Title Loan, luring Plaintiffs and those similarly situated to believe that this was the actual loan payment on the Title Loan. On information and belief, it is the policy and practice of TitleMax to train its employees to use "payment" language when referring to fee payments or monies paid to TitleMax, which will obviously confuse the consumer into believing that he/she is paying on a loan balance on not simply paying unrecoupable fees.

75.     TitleMax and its representatives further violated this section by engaging in a deceptive course of business by failing to allow Plaintiffs to independently review all of the required paperwork and disclosures for each individual Title Loan before entering into such Title Loans.

76.     TitleMax and its representatives further violated this section by engaging in a deceptive course of business by failing to adequately represent the nature and character of Title Loans to Plaintiffs or ensure Plaintiffs' complete understanding of a Title Loan before Plaintiffs entered into such Title Loans.

77.     TitleMax's violation of this section was all to the injury of Plaintiffs, as Plaintiffs continually refinanced their Title Loans, all the while paying Title Max the CSO Fee thinking that this was their monthly "payment" on the Title Loan, which such CSO Fee "payment" did not apply any proceeds to the Title Loan principal, but was paid in its entirety to TitleMax.

78.     TitleMax is therefore liable to Plaintiffs and Plaintiffs are entitled to recover the following pursuant to Tex. Finance Code §393.503:

      a.     Actual damages in an amount not less than the amount Plaintiffs paid to TitleMax;

      b.     Reasonable attorney's fees;

      c.     Court costs; and

      d.     Punitive damages.

79.     Therefore, in accordance with Tex. Finance Code §393.503, Plaintiffs seek all money damages, punitive damages, attorney fees, and any other relief allowable under Texas law and deemed appropriate by this Court, which is believed to exceed the jurisdictional requirement of this court.

80.     Furthermore, in addition to Plaintiffs' recovery of their money damages as set forth above, and as more fully set forth herein, Plaintiffs request this Court pursuant to Tex. Finance Code §393.502 enjoin TitleMax's violation of the Tex. Finance Code, and order that TitleMax immediately cease their deceptive business practices and fully inform their customers of the nature of the CSO Fee and the nature and character of a Title Loan.

### Fifth Cause of Action
### Violation of Deceptive Trade Practices Act

81.     Plaintiffs re-allege each and every allegation contained in paragraphs 1-82 as though fully set forth herein.

82.     Tex. Finance Code §393.504 provides that "[a] violation of [Chapter 393 of the Texas Finance Code] is a deceptive trade practice actionable under Subchapter E, Chapter 17, Business & Commerce Code."

83.     As indicated herein, TitleMax violated multiple provisions of Chapter 393 of the Texas Finance Code, and therefore such violations are actionable under the Texas Deceptive Trade Practices Act, Subchapter E, Chapter 17, Business & Commerce Code.  TitleMax committed such violations knowingly and intentionally, all to the injury of Plaintiffs and the general public and TitleMax is therefore liable to Plaintiffs pursuant to Business & Commerce Code §17.50 for the following damages:

a.      As a result of TitleMax's knowing misconduct, Plaintiffs have suffered economic damages in the form of fees paid to TitleMax for TitleMax's services in an amount not less than the minimum jurisdictional limit of this Court;

b.      As a further result of TitleMax's knowing and intentional misconduct, Plaintiffs are entitled to recover additional damages in an amount "not less than" the

maximum amount permitted by applicable law based on the allegation of actual damages above;

     c.     Pursuant to Section 17.50(d) of the Texas Business and Commerce Code, Plaintiffs are entitled to recover their reasonable and necessary attorneys' fees and costs associated with prosecuting this action; and

     d.     Plaintiffs are also entitled to recover pre- and post-judgment interest, at the statutory rate or at such other rate as is set by this Court.

84.     Therefore, in accordance with Tex. Bus. & Comm. Code §17.50, Plaintiffs seek all money damages, punitive damages, attorney fees, and any other relief allowable under Texas law and deemed appropriate by this Court, which is believed to exceed the jurisdictional requirement of this court.

## VI.    CONDITIONS PRECEDENT

85.     All conditions have been performed or occurred for all claims asserted herein.

## VII.    APPLICATION FOR PERMANENT INJUNCTION

86.     Plaintiff re-alleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

87.     Pursuant to Texas Finance Code §393.502, Plaintiffs hereby respectfully petition the Court to enter a permanent injunction against Defendant TitleMax of Texas, Inc., requiring the following:

     a.     Requiring Defendant TitleMax of Texas, Inc., to provide any and all of its customers in the State of Texas with complete copies of documents they execute at the time of execution in conformity with Tex. Finance Code §393.203;

     b.     Requiring Defendant TitleMax of Texas, Inc., to provide, or cause to be

provided, all required disclosures on their website and social media websites in conformance with Tex. Finance Code §393.222;

      c.      Requiring Defendant TitleMax of Texas, Inc. and its representatives stop referring to the CSO Fee as the "payment" on the Title Loan; and

      d.      Requiring Defendant TitleMax of Texas, Inc. and its representatives to fully inform their customers of the nature of the CSO Fee and the nature and character of a Title Loan, including, but not limited to, that the "payment" on a Title Loan consists of the CSO Fee, interest, principal amounts, and any other fees in a lump sum and that such "payment" is due on the maturity date of the Title Loan.

88.      Plaintiff requests that these injunctions be made so that the trier of fact can determine whether the TitleMax is liable for their wrongdoing and subject to damages and equitable relief, temporary injunctions, and money damages.

89.      Plaintiff has pleaded several causes of action against TitleMax including multiple violations of Texas Finance Code Chapter 393.

90.      The allegations and evidence submitted herewith demonstrate that Plaintiff has a probable right to the relief sought and are likely to prevail on the merits of their causes of action.

91.      Plaintiffs and those similarly situated will suffer irreparable injury without a permanent injunction to prevent TitleMax from continue profiting from their conduct which is in violation of Texas Finance Code Chapter 393 and having the effect of misleading the public.

92.      An adequate remedy at law is not available to protect the rights of Plaintiffs' and those similarly situated.

93.      Therefore, Plaintiffs respectfully request that this Court set a hearing and issue an order granting a permanent injunction as provided herein.

## VIII.   DEMAND FOR TRIAL BY JURY

94.     Plaintiff hereby demands trial by jury on all claims for which the law provides a right to jury trial.

## IX.     PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Kimberly Babb, Jose and Linda Casarez, Jennie Reed, and Tammy Venable, Plaintiffs herein, on behalf of themselves and those similarly situated, respectfully pray:

1.     That the Court enter an order certifying this action as a Class Action;

2.     That Defendant TitleMax of Texas, Inc., doing business as TitleMax, will be cited to appear and answer herein;

3.     That after trial on the merits, the Court permanently enjoin TitleMax and TitleMax's officers, agents, servants, employees, successors and assigns, and attorneys in accordance with relief requested herein;

4.     For money damages in an amount to be determined by a jury;

5.     For exemplary and punitive damages according to proof;

6.     For costs of suit incurred herein, including reasonable attorneys' fees;

7.     For such other and further relief, in law or in equity, to which Plaintiffs and those similarly situated may be justly entitled and this Court deems just and proper.

Respectfully Submitted,

CHRISTMAN KELLEY & CLARKE, PC

_____/s/ Kenton S. Brice_____
Andrew W. Christman (Bar No. 24066729)
Dugan P. Kelley (Bar No. 24066627)
Kenton S. Brice (Bar No. 24069415)
Attorneys for Plaintiffs
Christman Kelley & Clarke, PC

2570 Justin Road, Suite 240
Highland Village, Texas 75077
972.253.4440
866.611.9852 fax

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2013, I electronically filed the foregoing document with the clerk of the Court for the United States District Court, Eastern District of Texas, using the electronic case filing system of the Court, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Lawrence Bradley Hancock
hancockb@gtlaw.com
lachnerd@gtlaw.com
peacockj@gtlaw.com
Attorney for Defendant TitleMax of Texas, Inc.


/s/    Kenton S. Brice
Kenton S. Brice